Tilghman C. J.
Thomas Poultney sold a tract of land to the plaintiff, and conveyed it by deed containing a clause of warranty against himself, and all persons claiming under him. An ejectment was afterwards brought against the plaintiff by Alexander Scott. Thomas Poultney received notice of this ejectment and undertook to defend it. But as he lived at a considerable distance, he requested the plaintiff to *attend to it. Scott recovered, and the plaintiff was turned out of possession by legal process. On the trial of this action, which was brought to recover damages for the breach of the warranty, the plaintiff’ having given the record of Scott’s ejectment in evidence, offered to examine Judge Yeates before whom that ejectment was tried, to prove what was given in evidence on that trial, in order to show that Scott claimed under Thomas Poultney. The testimony of Judge Yeates was overruled, on which the plaintiff’ suffered a nonsuit, which he now moves to have taken off, and a new trial granted, on the ground of the evidence having been improperly rejected.
It is agreed that the record of Scott’s ejectment was legal evidence. It could be evidence on no other ground, than that it tended to prove the plaintiff’s allegation, in the issue joined, viz., that Thomas Poultney had not defended the plaintiff against all persons claiming under him. But the record itself does not show under whom Scott claimed. In order therefore to ascertain this material point, it was neces sary to prove under whom he claimed, by matter dehors the record. It is not permitted to make an averment against a record; but where the justice of the case requires it, you may always show matters that passed at the trial consistent with the record. As the plaintiff does not set forth his title in an ejectment, I know not how it is possible to prove under whom he claimed, but by showing the evidence on which he recovered. If Scott did recover on a claim under Thomas Poultney, the warranty is broken, because Thomas Poultney did not defend the plaintiff according to his covenant. If no notice of Scott’s action had been given to Thomas Poultney, the record would at all events not have been conclusive evidence against him, because it would be against justice to bind him by a proceeding to which he had no opportunity of becoming directly or indirectly a party. But after the letters which were produced from Thomas Poultney, I consider him as substantially a party to Scott’s ejectment. "What *325 should be the measure of damages, the jury would have to decide; but there must always be damages, where a man is turned out of possession. Whether it would have been competent to the defendant to have offered other evidence than that which was in the in order to show that ^Scott’s title was not lawfully derived from Thomas Poultney, it is unnecessary to decide now, and I give no opinion on it. But it appears to me, that at all events it was proper to show the evidence which was given by Scott, in order to enable the jury to judge of the source from which his claim was derived. I am, therefore, of opinion, that the nonsuit should be taken off, and a new trial granted.
Yeates J.
Inactions of covenant, founded on a special warranty contained in a deed conveying certain lands, it is incumbent on the plaintiff, to show that the vendor has violated his agreement, in not defending the possession thereof against all persons claiming under him.
I agree that a verdict and judgment in an adversary ejectment, brought by a third person against a vendee, wherein he has been evicted of the possession, may be given in evidence in such action; and that it will be conclusive evidence of the title being in such third person, unless it can be shown, that there has been fraud or collusion between the parties to that ejectment. But it will still remain to be shown that the recovery was had by, from, or under, the grantor or his heirs. A striking distinction must exist in this particular, between a general and special warranty, the former being a warranty against all mankind, and the latter being restricted to particular persons.
I was called upon to testify what had passed on the trial of the suit before me at Lewistown, on the 12th May 1801, between the lessee of Alexander Scott and Jacob Leather, the now plaintiff, in order to prove the recovery to have been under Thomas Poultney. Assisted by my notes, taken at the time, I could have detailed the evidence written and oral which was adduced on both sides. Those notes have been read by the plaintiff’s counsel on the argument to take off the nonsuit. It appears thereby, that both parties claimed under an application entered in the name of Thomas Poultney on 3d April 1769, No 2, for 300 acres of land on the north side of Bald Eagle creek; but the lessor of the plaintiff established the facts, that the original entry was made for this and eleven other tracts, for the use of a partnership between Robert Callender and Matthias Slough, the latter of whom had paid the surveying fees ; Scott therefore *326 n0^ c^m udder any contract with, or eonveyanee from Poultrey, but adversely to him. It further appears that Joseph Poultney, James Crampton and Thomas Holt, furnished the discovery of this tract among others, and let in Callender for one fourth, who was to take out the orders, and the surveys were to be at their joint expense. Crampton released to Callender in August 1769; and according to the testimony of Arthur Buchanan, Joseph Poultney told him, in 1773, that he had sold his interest in the land to Callender likewise Callender disposed of one moiety of his claim to Slough, who in consequence thereof caused the application to be entered, and paid the fees of survey. Joseph Poultney sold his equitable interest to his father, the aforesaid Thomas Poultney for 110i., but at what period of time, did not appear. The latter, in May 1774, patented the tract. Though in the ejectment, therefore, the plaintiff claimed under Joseph Poultney a certain equitable interest in the land, it was not under him, as the heir of his father Thomas Poultney ; for nemo est hceres viventis.
If this brief summary of the evidence had been opened, before my testimony had been offered to another judge sitting on the bench, in order to prove the breach of covenant on the part of the defendant’s intestate, I have little doubt that he would have thought it insufficient for that purpose. It would be matter of law, whether, on the facts stated in my notes, the operation would be a claim of Scott within the words of the covenant; and of this operation I was necessarily called to judge.
But I will meet the question in another point of view. Ought the written or parol evidence given to the jury on the trial of the ejectment, to have been detailed to the jury in the action of covenant, to prove that Scott claimed under Thomas Poultney, without showing the slightest efforts to obtain the one or the other ?
In the ejectment the right to the possession of the lands was tried ; but now the question is, whether the defendant’s intestate has broken his covenants. It will not be pretended, that because Scott recovered against Leather, the jury were to presume that he claimed under Thomas Poultney. They were sworn to try the issue, whether the latter had broken his covenant or not; and it appears to me, that the supposed Scott under Poultney, should be made out to the satisfaction of this jury, by independent original testimony. I thought on the trial, and still think, that the subjects of inquiry in the two suits were different, and that the examination of the witnesses would be differently con *327 ducted. Admit that Thomas Poultney received notice of the institution of Scott’s ejectment against his vendee, and that he failed in his defence, or neglected to defend the suit; does his personal representative thereby forfeit his right to impugn the facts sworn to on the former trial, or to cross-examine the witnesses, whose testimony tended to fix a responsibility in him to answer in damages? Put the case of a deed, shown on the trial of the ejectment, whereby the intestate, previous to his sale to the now plaintiff, was supposed to have conveyed the lands in question to a third person, under whom Scott deduced a regular title; or that a witness had sworn to a parol contract made with such third person, a delivery of possession under it, and a full payment of the consideration money: would it not be competent to the now defendant, to adduce proof, that in the first instance the deed was forged, and in the other, that the witness had mistaken or misstated the facts ? I am of opinion that the now defendant would, in the cases I have supposed, have an unquestionable right to go into such defences. I regard the former verdict, and the unreversed judgment thereon, as indubitable evidence of the right of possession in Scott; but I conceive that the substratum of this action of covenant, the claim of Scott, by, from, or under Poultney, should be proved to this jury, in order to entitle the plaintiff to recover therein. I am not so extravagant as to assert, that many matters which passed on the former trial, might not be given in evidence by the judge before whom it was tried, or any bystander; for these maybe considered as inducements to the present action. So also what the witnesses have testified on the former trial, may be now shown in corroboration of their former testimony. But I adhere to the opinion I have already delivered, that the acts of Thomas Poultney done in violation of the written words of his conveyance to Jacob Leather, must be shown by substantive and independent proof; and ought not to rest on the verdict of the former jury, or a detail of the evidence had before *them. My testimony was offered for the precise purpose of proving the recovery of Scott, to have been under Thomas Poultney ; and in that point of view, I deemed it inadmissible. The principles of decision in the present question of evidence, seem to me to involve matters of much moment to every man who has sold lands with a covenant of special warranty.
Brackenridge J.
In the case of a special warranty, it is not sufficient that an eviction be shown; but the defendant *328 must be brought within his covenant, and the eviction shown to be under what was warranted against. The case before us is that of a special warranty ; that is against a title derived, from, by, or under the vendor himself. This may be by written document; or it may be that no equity is passed, and to be made out by parol testimony. If a written document, the bare producing the writing will not be sufficient; there must be proof that the writing was produced on the trial as a ground of the eviction ; and this can be made out only by parol testimony. The question simply will be what was given in evidence on the trial in which the vendee the present plaintiff was evicted. The evictor’s papers, if I may so style him, may not be in the power of the evicted ; or to be reached even with a duces tecum to the evictor. He may be out of the reach of the process of the court, gone beyond sea, or his place of residence not known, so as to direct a commission. His suit, or witnesses, may not be known, or their place of residence. It would be contrary to all reason and convenience, that the evicted should be held to the producing these. It is sufficient if he produce evidence of what they said on the trial. And even were they themselves brought forward, no other question could be asked but, “ what did you say on that trial ?” Eor it must be taken that it was on what they then said, that the eviction took place.
The recollection of him who gave the testimony may be the most correct, but it is not in contemplation of law the best evidence ; for it is in legal language no better than that of another person, as to what was said by the witness on that occasion. Eor what was said on that occasion is the question, and a by-stander, a juror or a judge may be heard with respect to it as well as the witness himself. The *testiraony witness himself, given again is not of a higher grade, but ejustum gradus; on an equal
shelf with that of any other person. Admit that it should afterwards appear that the written document given in evidence had turned out after the eviction to be forged, or that the witnesses had sworn falsely and been convicted of perjury, this could not affect the evicted in the action on his covenaut, having given notice, unless, that if the action was yet pending when the discovery was made, it might be stayed during a proceeding in ejectment to recover the possession ; and this at the cost of him who had given the warranty. In this particular the law must be the same in the case of a general or special warranty. Under the chancery power of the Court, proceedings might *329 be stayed in either ease, until the vendee, the defendant in the covenant, should have an opportunity to show the fraud, and regain the possession. But it is on him that the onus probandi must lie. He had notice to defend. And if his name has been forged, or witnesses have sworn falsely as to his acts, he must make it out. I am of opinion therefore that the judge before whom the cause was tried, and who in this case has overruled his own testimony, ought to have been heard, and the nonsuit therefore must be set aside.
Nonsuit taken off.
[Cited in 11 S. & R. 175 ; 17 id. 361; 1 R. 443 ; 3 id. 179 ; 4 id. 112 ; 3 H. 59 ; 8 S. 102.]